Next case for argument is 22-1939, Promptu Systems Corporation v. Comcast. Mr. Jacobs. Good morning. May it please the court. The issues in this last appeal today relate only to claim construction of two patents. And for the specific terms that are on appeal, and this is from the district court, the district court here chose the narrowest constructions proposed by the defendant and had provided very little analysis. What the court did is it looked at dictionary definitions, other extrinsic evidence to define the terms, instead of looking primarily at the specification. And I'd like to start with the channel terms, the back channel and the speech channels that are in the 196 patent. Now, in construing these claims, the court reached the wrong result because it imported limitations into the claims. But in doing so, the errors that the court made were, as I said, first using a general definition of channel, taken from the dictionaries, the expert proposed by Comcast, and it's not required by the specification. And what was your proposed construction? Our proposed construction for back channel was a stream of communications transmitted upstream from set-top boxes. And the key there is really the upstream transmission. It's not a particular physical format, which is where the district court got off the track. So your view is the word back channel refers to data? It does. Not to a pathway? Not to a specific path, because if you read the specification and the various techniques that are described, that path may change. It could be a dynamic path. It can be done in many different ways. Would you agree that a common, plain definition of the word channel is a pathway and is not usually data? Channel sounds an awful lot like structure to me, and I think there's some extrinsic evidence that was introduced that's consistent with that. And I assume you're just going to tell me, yeah, that's not the way it was used in this patent. I think that's right. And even if you look at it as requiring a path, the thing here is it's not a fixed path, using either a fixed frequency. There has to be a path. So here, received back channel. I mean, I may have noted once before in passing that, you know, this is not the best drafted patent I've ever seen. Yes, yes. Anyway, but received back channel was construed by the court as data received via the back channel. Yes. So that doesn't sound like data from data, right? That sounds like data from a pathway, doesn't it? You didn't appeal that construction. Nobody did. Nobody appealed that construction, right. So received back channel, for better or worse, seems to have been decided to be data. Yes. But the definition is data that is received via, the word via, the back channel. Right. Seems like you've got to receive something from something, right? Like not data, data. You're right. So here's where I am, Mr. Riggs. I'm honored to present with you. I don't get where this fixed frequency time slot thing came in. It just seems like it's not necessarily required by the term. But I also don't love your construction because you want to make the fixed back channel data, or the back channel data. And I don't think that concords with the prior construction for common sense. And I understand that happens kind of all over the place in its use of these words. But what do you think about a communication pathway for signals upstream? This is a question of law. I don't have to pick between you. No, I understand you. This poor district court judge, I have a lot of sympathy for him. I think he did a great job. I don't totally love the briefing in this case. I think that, I'm going to be honest, I think that some of your briefing in this series of appeals is not consistent with my expectations of your law firm, which have been consistently high. I think there's a lot of rhetoric and disregarding this and chutzpah that and other stuff throughout this briefing that isn't the norm that I see and not something I'm excited about. And I think the district court certainly echoed in the transcript a similar feeling. I think he said that even when he goes senior, despite the fact that he did get rid of this case, he's not going to make anyone else have to deal with you all. That's not good. That's a really sad thing. Because it's not consistent with my experience with either firm. But it is consistent with, I guess, the case here. Well, your criticism is noted, and thank you for letting us know that. But so anyway, I just go back to this. If I agree with you on the fixed bandwidth frequencies, and I agree there's not time slots... Or the time slots. Or time slots, yes. And one of the problems with using the word path or pathway is it can change. To the extent that your proposal would imply some sort of fixed pathway, that's not required. Because if you think about it, if it's an Internet communication through the back channel, such as is described with the DOCSIS cable modem, or the speech packets over the Internet, they don't all follow the same path. There is a path, because to get from A to B, there has to be some way to get there. That would be my only concern, is that there would be some assumption that that is limiting to a path that is fixed and traversed every time by a back channel. This, I guess, leads me to a question that applies to the several channel kind of issues, but also more generally. What, if anything, can you tell us about which of the claim constructions you challenge would have an effect on the bottom line of non-infringement? As you know, we have some cases that say sometimes we will not even decide a series of claim construction issues until we know which ones matter. Understood. What are we to do about that? Right. And the briefs don't really do much to help you there. Anything. Yes. The channel terms, back channel and speech channels for the 196 patent, they appear in every asserted claim. That's just positive. If we don't win on those, then that patent, the judgment should be affirmed. I know I'm diverting you a little bit, but how much do you need to win on those? Suppose we said wrong about fixed frequency or time slots, but maybe it is more the thing via which data is being sent than it is the data. Well, fixed frequencies and time slots, that's almost half for us. If that remains in the construction, we can't proceed. Is it enough half? Let me explain a little bit about the posture of the case. Discovery wasn't completed, including expert discovery. Based on these claim constructions, we had no basis to go forward. Whether or not another construction like pathway, we could find that to be infringed, I believe so, but I don't have a definitive answer. What about now the non-channel claim issues that are before us? Let me talk about the centralized processing system in the 538 patent. That one is also easy because it's the only one in the patent. Although it has two parts, right? It does. Where it is and whether it has to do it solo without help. Yes, that's correct. The applying and performing aspect of it and then the location. Do we have to decide both of those aspects for the 538? That is, do you have to win on both of those aspects? We have to win on the first part on the location. The performing and applying, I think, again, we didn't complete the discovery. I'm sorry, I got lost for a second. What limitation are we on now? I'm talking about the 538 patent and centralized processing system. It's the only term that we've challenged, and it only appears in Claims 34 and 40, so those are really the only ones that remain at issue. Then if I go back to the 196 patent, there's another term that we have raised. That's a speech recognition system coupled to a wireline node. That doesn't appear in Claim 1. Theoretically, that term is not dispositive. It does appear in the other asserted claims. As in previous cases, if you address the dispositive term, we would ask the court to also address the claim construction for that one. I realize that may be complicated by the fact that Claim 1 is up on appeal in the previous appeal that we just discussed that Mr. Schroeder argued, so that complicates it a little bit. But just looking at this case alone, that term wouldn't be dispositive because it's not in Claim 1. Which term would you like to focus on? Let me ask you another thing about this back channel, and this might be a stupid technical question. I admit the technical incompetence. If we set a communication pathway for signals traveling upstream, couldn't that incorporate a dynamic pathway? What I mean by that is frequencies don't have to be set. You can have multiple switches. Basically, the frequency can be whichever frequency has the least other traffic on it or something could be utilized. If I use the word pathway, I don't know why that would necessitate a fixed frequency pathway. I agree. I don't know anything about the accused device, but that's my guess. I'm literally just guessing. But I'm guessing that this is about fixed versus dynamic. Really, any communication path could work. It could be over the internet. And as I'm sure the Court's aware, that can take all kinds of forms from getting to point A to point B. If there's a speech packet that is sent, it could be a packetized internet connection. And there is no fixed path. Those packets can take all different routes to get from point A to point B. There is a pathway. No information can go from one place to the other without a pathway. It's just not necessarily the same one and assigned to a particular user. And that was one of the issues with speech channels, that in addition to saying that there had to be a fixed frequency or a fixed time slot, that the Court said that they had to be identified with a specific user, that path. And so if there's any suggestion that the pathway is identified with a particular user, that's also not required. There's not a one-to-one assignment of a band of frequencies or a designated time slot. And because we have limited time, can I just push you forward to the multiplicity of received identified speech channels? Sure. And can I understand that your argument on appeal is actually relatively similar to what we were just discussing? It is, yes. First off, where do single band of frequencies come from? I didn't see anybody argue single. I mean, that just seems to have come out of nowhere. I think what the judge was, what the construction was doing there was looking at the fact that there is a multiplicity of users and assigning a channel to a user, and then it came out to a single frequency or a single band. And I would agree that... In the contest, you proposed that. Yes, but there is no support for that in the specification or anywhere else. The Court on the speech channels terms also looked at the 874 application, which was incorporated by reference. And as I'm sure the Court knows, using an incorporated reference as a basis for definitions, there have been multiple cases that say you shouldn't do that. Now, if I could turn to the other patent, the centralized... I think there's one more issue on 196. Speech recognition system coupled to... Yes, I'm more than happy. As I said, that one may or may not be dispositive because it's not in every term, in every claim. It's not in claim one. I'm happy to address it, though. The other case perhaps makes claim one go away, but it doesn't make these go away, right? These are like 1427-53. That's right. The key issue on that term, the speech recognition system, it's whether it can perform other functions. Now, if you look at the Court's construction, a system whose function is speech recognition, not really sure. If you look at the memorandum of opinion, the Court said that it, as we understand it, excludes larger systems that ancillarily perform speech recognition. I guess here's what I'm trying to figure out. Siri is a speech recognition system, right? So my iPhone has a speech recognition system. Is it only the portion or the subroutine contained within the iPhone that effectuates the speech recognition that is the speech recognition system, or is the iPhone the speech recognition system? And the reason I ask is I think it's kind of similar. The iPhone obviously performs a million functions. It does. Not limited to speech recognition. And so I'm just trying to figure out if it has to be just the portion limited to speech recognition system, I'm struggling with how do I identify what portion that is based on what's been argued and briefed and the fact and everything else. Well, I think the key point is that it's not limited to speech recognition. It can perform other functions. And by saying a system that ancillarily performs speech recognition, it doesn't really answer the question. What I think you can do is look through the specification, and in particular at column 40, line 42, where it says the speech recognition may include multiple computers, can be made up of multiple computers. And then it goes on to say that that speech recognition computer can perform other operations. This is in column 41. Communications, managing billing functions, credit card information, network services, including guide listings. It could all be part of the speech recognition system. I'm going to press on this a little bit, and I guess in relation to the question that I asked you before, I'm just going to call it the Jung or whatever that case was, one of the early cases that said, until we know more context, we don't know, we won't really think this claim construction question should be decided here. And it relates to what the chief was just saying about what is this notion of a speech recognition system, and there are in play here various notions, none of which seems kind of intuitively just right. The claim construct, the district court's one, which seems to presuppose a single function. That wasn't even the proposal from Comcast, which said something about, I don't know, dominant, or some word like dominant function being speech recognition. And I'm not even sure whether a system is a physical thing or a set of routines operating within a variety of physical devices. Might this be a claim construction issue that we ought to send back for reconsideration if necessary when the factual context is more developed so we know what the consequences are? At the very least, we would ask you to vacate the construction and send it back if the court can't itself say what the construction should be. At least to that point, the construction that was given is wrong and should be vacated. I think if the construction is construed as a system that can only perform this and cannot perform any other functions, it has to be wrong. But I just don't, exactly like Judge Toronto, I don't know what else to say about specifically, and I wouldn't want to offer things in the absence of thorough and thoughtful briefing on what it is or isn't. And so I'm kind of with Judge Toronto in the hunting idea, like hunting it back and letting the district court develop and come to a construction when it has more information. Well, we would appreciate that at the very least if the court were to vacate the construction. As I said, their discovery, including expert discovery, was not completed in this case. We don't have the full factual... There's a bunch more I've got to get through with you just because I assume that you'd agree we're not coupled to each other, right? We happen to be near each other. We are at the moment, yes. Yeah, that's right. So that was a problem for me when I read it. Now, of course, with RF frequency coupling, but that's not what this is about. That's not what this is about. Yeah, exactly. So that was a bit of a problem for me in the construction. And what would you like to tell me about wireline node? Well, the court equated wireline node with centralized wireline node. When centralized isn't there, it obviously doesn't appear in the claim language. A wireline node is a node connected by a wire as opposed to a wireless node. A hardwired node.  All right. And am I remembering right that the phrase without the modifier does not appear alone anywhere in the specification? It does appear a lot. Oh, it does. In fact, centralized wireline node appears a couple of times, but most of the time it's not. With a kind of early definition. Here's what we mean by this. And then the district court said, so I think wireline node without the centralization is only a shorthand for the three-word phrase. Yeah. And that's not usually the way claims work. When the word's left out, it's for a reason. All right, well, now... Thank you for... No, I'm sorry. I don't want to go yet. I do want to talk about centralized processing station. Sure. My colleagues will indulge me. I'm sorry to have run so far over. But centralized processing station. Why isn't it the head end unit? I mean, you have, at least in the preferred embodiment, given both, maybe number 160 jumps to mind. I don't know what it means. I mean, you refer to them as the identical thing. Why isn't this construction correct in light of that? Well, the way I would express it is those terms are applied to the same structure. It doesn't mean they have the same scope. You can call something a building, and you can call it a courthouse. They may describe the same structure, but one is more general and broader. And that's exactly what centralized processing station is. You can just look at the words. It processes, and it's at a central location, meaning remote from the users at some other location. It doesn't mean at a head end unit. There are other claims. There's claims 2 and 19 at a cable television head end unit. And so while that structure in the specification may be referred to by both those terms, it doesn't mean that they're coextensive or interchangeable. And as the court knows... Under your summary of invention, though, I mean, this seems to... I understand that your point, that even though they're both given the number 160, it's possible that every component in them isn't the same, and maybe they have some functionality that differs. But as for location, in the summary of the invention at column 2, you say... This is under summary of the invention. The voice command is then transmitted, for example, to a central processing station located at a cable television head end unit. A computer at the cable head end unit processes the voice command. So why is the district court wrong in terms of, I'll say, location? Yes. Well, if you look at the words, centralized processing station, it does have a location, but it's centralized, not meaning at a specific point, like the head end unit. The head end unit is much more specific, and therein lies the difference. One is a general term, and one is a more specific term, even though they are both used to refer to a similar structure. You know, there is a case law that says we use different terms, generally presume they mean different things. I think that applies here. Yeah, but in this patent, you gave them the same number in the figures, you know? That's true. I don't know what to do about that. Well, I can go back to my example and say one is a more generic term describing the same structure. It's also a preferred embodiment, and a centralized processing station makes that more general. I mean, is there anything in this patent anywhere that discusses or differentiates, even if not directly, the functionality of the head end unit versus the functionality of the central processing station? I don't think so, no. The head end unit is a generally understood term in cable networks. A centralized processing station is a more generic description of the function, even like what the invention is about, which is having speech processing not at the user site, but at a central location. It could be at the head end unit, as described in the preferred embodiment, or it could be somewhere else. It's not just the preferred embodiment, it's somewhere in the invention. It is, but there are also permissive words, like for example, and the judge looked at the grammar and what it was modifying, but still, I don't think anything of the typical language you see that says this embodiment is the invention that you will find here. Can I ask about the other issue with respect to the central processing station, that is, the idea that that central processing, centralized processing station, sorry, need not itself carry out the voice recognition, but only it's enough that it's performant. It's enough if it gets that result from elsewhere. Is that really consistent with the language of the claim about the centralized processing station configured to receive and process output by applying voice recognition? That sounds like it has to do it, rather than applying the results of a voice recognition. I think what the thought there is, by applying it, it doesn't mean that it has to carry out the functions itself. It could call another function in the computer to do that. There could be something else, and by applying it, it doesn't limit it to actually performing it. The difference there is the word performing is used in other claims when that specific component is the one that is doing the processing. If you look at the actual functions, you've got receiving and transmitting, and in between that, you have applying speech recognition. That could be either performing it or asking another component to perform it. Finally, if I were to disagree with you about that, does that resolve the 538 alone without deciding on whether it has to be co-located with the header? My understanding is that that does not resolve it, that it's the first part that is dispositive. Okay. Thank you, Mr. Jake. Sorry that we went so far over. Mr. Perry, obviously, you have equal time. Thank you, Your Honor. May it please the Court. We'll go back to the channel limitations. The debate in the district court was this question between data versus pathway, and that was the main debate. And then if it was a pathway, what kind of a pathway would a person of skill in the art in the early 2000s understand in the context of this network art to be described, disclosed, understood? So we had a two-level analysis, and the district court ruled first that it is a pathway, not pure data, and second that the pathways described in the patent clearly are frequency-based and time-based. That was the prevailing technology in cable and video technology in the early 2000s, as Mr. Schmatt set forward in his declaration, which the district court cited. Are all of the pathways that are described in the specification consistent with the construction here, that it's either frequency or time slot? Yes, Your Honor. So there's no commonplace Internet change, a physical pathway, maybe you can do it multiple times, move around through routers just to make sure, because the only thing that matters is that the right stuff gets to the right pinpoint. So that is not disclosed in the patent. The embodiments disclosed in the patent which describe various protocols and known methodologies, time division, multiplexing, and so forth, are all frequency or time-based. And the construction adopted by the district court does not exclude any embodiment disclosed in the patent. The only one that Prompton raised in the district court as potentially being excluded was DOCSIS, D-O-C-S-I-S, and Mr. Schmatt put in a reply declaration affirming that DOCSIS was not excluded either as a district court noted. So it is not the case that the construction reads out any embodiments. It is possible to have both dynamic frequency, it is possible today to have both dynamic frequency, dynamic time, and non-frequency, non-time-based, including packet-based internet transfers. They are not disclosed in the patent. There is no evidence, when we get to the extrinsic evidence, no evidence that that would have been understood to a person of skill more at the time of the application to be a way to effectuate these transmissions. This is old technology, if you will. It was new architecture, we agree with that, revised architecture, using old existing systems. They didn't invent a new cable system, they claimed to have invented architecture for a cable system, all of which at the time used frequency or time-based transmissions. Can I ask what to make of your expert's testimony at 8215? This is your expert, and he explains that such packets may or may not be sent upstream using defined frequency bands or channels. So, your expert interpreting this patent, looking specifically at the patent, and columns and line numbers, he seems to be saying that it doesn't have to happen, it can, but it doesn't have to happen by defined frequencies or channels. So, why isn't that a problem for you? Your Honor, the reference there, as I understand it, is to the packet addresses, not packet information, and that the address packets may or may not be transmitted. Not that a packet may or may not be transmitted. In other words, when the packet... No, the issue is about whether defined frequency bands or channels are required. Yes, Your Honor. That's what it's about, right? And that's what we're trying to figure out now, is does it have to be a static band, or can it be something dynamic so it's not the same all the time? He says it may or may not be sent upstream using a defined frequency band. Yes, Your Honor, and I agree with all of that. My point was, if we look at the patent at 1820-23, which talks about the speech packet processor, the upstream speech packets, he's saying that that is not excluded by the construction he's had here. Maybe I'm clueless enough to answer the question. I'm a little confused about this. I'm drawing more on a particularly dangerous kind of knowledge, which is something you think you know from elsewhere. I thought that packets have an address component and a payload component, so a speech packet will have an address. It's not like a portion of the packet containing the address goes a different place from the payload. So there are different methodologies described in this specification. One of the methodologies described in here for purposes of multiplexing is an address packet so that you can identify the user device from which it comes that doesn't include a payload, is my understanding. The address plus payload, Judge Toronto, you described as more of an Internet-based protocol where you've got to have both together or the packets get lost. That kind of pure packet-based method isn't described in here. As Mr. Schmant explained in one of his other declarations, the packets that are described in this specification are more like the old packet switch telephone network, which is a time-based packet rather than the modern Internet protocol packets. So I think the use of the word packets has changed over time as to what a packet is. In 2000? Even I was using the Internet. But cable television wasn't, right? These claims are not limited to cable television. They're not, but the disclosure is written largely in terms of fiber-optic coax and HFC technology, all of which would have been frequency- and time-based at the time. So really that was where the debate was. And again, it came from this question. Where is the evidence that everything would have been frequency- and time-based at the time? That's the problem. The problem for me, I absolutely see what you're arguing about how the embodiments often talk in terms of hertz and other things. So I get that the District Courts construction hasn't excluded any embodiments, but I'm concerned it read a limitation into the claim, namely a requirement that the back-channel communications occur by a fixed band of frequencies or time slots. And I don't know why. I don't see anything in the patent that suggests that that is a requirement, that it has to be fixed. I certainly see examples where it's fixed, but I don't see anything saying it has to be fixed. And I don't understand the technology at that exact time to have been limited to fixed bands. I understand the technology at that time to include dynamic, but I don't see anything in this record that suggests it was limited to fixed. So Mr. Schvant testified a couple things. One is that by fixed he meant including predetermined rather than... Where is this testimony exactly? Your Honor, I apologize. This piece of it is in the original declaration, which is... One of you all know. Yeah, it's around page 6432 is where it starts, Your Honor. Okay, well, this is the start of his declaration, so where does he suggest that it has to occur through fixed bands and frequencies? So... I have two different versions, Your Honor. So I have the whole declaration here. I apologize. I'm looking at the appendix version, and some of these pages are not in the appendix. He has the discussion of the speech channels. There's paragraphs 103 to 116, and the back channel goes 117 to 123, and not all of those are in the appendix, I'm realizing, as I compare conversions at the podium, which is a mistake. So in there, when he discusses both the use of the frequencies and the disclosures of the patents, he explains, for example, the technological dictionaries, the use in the art, and the use in the specifications as to frequency interval. 106 and 107 describe frequencies and time, for example, but I apologize, they're not in the appendix. I don't have any of that evidence, and I certainly didn't see anything in this record that suggests that the art was limited to fixed frequencies at the time. Is that your assertion? Is it your assertion that it was, in fact, limited? That is not my assertion, Your Honor. My assertion is that the disclosures in the patent are limited to fixed frequencies. Where? What's the disclosure in the patent? Well, all of the examples provided in the patent. Okay, but the fact that the specification where each of the examples talks in terms of what's your time slots is one thing. It's a different thing when that information is not contained in the claim to limit the claim to that. Agreed, Your Honor, and again, that's why I started with the debate was between the paths and the data. What the paths are, then the court looked to the disclosures. When the claim describes the back channel, for example, it says often on a 5 to 40 megahertz band, right, because of the limitations of the bandwidth provided by the cables for the upstream communications, and used that as evidence that the person of skill in the art reading this patent at the time would have understood it. You know, we have here a challenge. We are all struggling with it, right? We have a patent that uses the word channel 294 times and never defines it. And, you know, it is what it is. I'm not complaining, but it has given some interpretive struggles to this court already, to the district courts, to the PTAB. Sounds like a complaint. I'm sorry? Sounds like a complaint. Your Honor, it's a full employment opportunity as well. And, you know, this could have been obviated, obviously, by the patent holder. We also have the oddity that the claims and the specification have departed from each other over the years, right? This application has evolved into something else. Okay, this is way too general, and we've got too many terms to get through. I'm sorry. So why don't you jump to the multiplicity of received identified speech channels, and certainly, I mean, what does this single band of frequency thing mean? What does single come from? Single comes from identified, Your Honor, that it's the one-to-one user identification that's required in the claim. Identified is a user-identified, and so it has to be a single band or single time slot to identify that user site as opposed to a, well, to identify that user site. Does this term also just come down to whether it has to be specific frequencies and time slots again? So there's two pieces to it. The speech channels piece, yes. I mean, that is the debate in the district court was data versus paths, and we all think it's paths. Well, it's not just data versus paths. It's data versus defined, delineated paths as opposed to dynamic paths. Right, what kind of paths, exactly. And then the multiplicity of received identified is where that single, the one-to-one restriction comes in. Suppose we were to decide that there doesn't have to be a fixed defined path for the channels. It's just any way of getting the data across. Does there remain an issue about the speech channel one? Because I take it that you are inferring something in the nature of a one-to-one correspondence between the multiplicity of identified speech channels and of the users. I'm beginning to have a problem envisioning what I'm looking to be one-to-one if at least one side of it can be dynamically variable. Well, so Your Honor, if you look at the order of operations and the claims, the back channel goes up to the speech processing engine. It's received, speech is processed, and then it has to be partitioned into this multiplicity of received channels, and then it goes back downstream. That's, you know, the way the claim reads is stepwise. The path, you know, whether defined by, well, the path needs to be defined so that we know what is being received. Wait, the multiplicity of identified received, of received identified speech channels is on the way up, not on the way down. I mean, obviously, if it's one of those... Yes, Your Honor, it's received on the way up, and then it's partitioned. It's part of the back channel. Part of what's going up in the back channel, and then it's partitioned according to the other limitations, correct. The speech channel is, well, let me answer it this way. We think channel should mean essentially the same thing in the two, back channel and speech channel. A channel is a channel. We need to understand what that is so that we can apply it across that. If it's a pathway, then we can apply the rest of the limitations to that. If it's data, we can't, right? So I'm going to ask a question, which I think the Chief might put under the heading of punting, but suppose we said the back channel claim construction is wrong for some of the reasons we've been talking about. Might we revamp the multiplicity of speech channels issue to figure out what that might mean once you have a different notion of channel than one started with? I believe, and we're going to get way past my technological kin as well, they're iterative. The back channel has to include a multiplicity of received speech channels. So however the first is defined, it has to be capable of including the second under the language of the claim, and that's not a point that is met by Mr. Schmantz's explanation of frequencies and time. But that point was not debated as to these other things. Right, but I guess I'm reading the district court's construction of the multiplicity of received identified speech channels as dependent on prior acceptance of the notion of designated frequencies and time slots. That's correct. He started with the definition of channel. It looks like the premise would be knocked out from under that if we disagreed with it at the threshold. I agree with that. Okay, if you want to turn to speech recognition system coupled to a wireline node. Happy to do it, Your Honor. You know, the speech recognition system is a level of generality dispute. Is it a system that performs speech recognition, whose function is speech recognition, which is what the court said, or any system in which speech recognition is performed, which is really the other side. I mean, it's a level of generality problem that the court resolved, I think, in a common sense way in light of the way the claims are used and the way the terms are used in the claims and described in the specification as, you know, the inventive aspect here. We've heard this four or five times today, is the location of the speech processing system in the network, right? That's what prompt to ultimately claims to have invented, is moving the speech processing away from the set-top box and into the center of the network. That means there is a thing that can be moved and located that has to have a physical locational aspect, and it's something it does. And I'm blending, I realize, the 538 point, but they're related. What that thing does is process speech. So, you know, I don't know what more to say on that. Happy to answer questions. Coupled to, you know, this is a patent about proximity. Mr. Schmant explains why in the early 2000s, latency and lag time was very significant, much more than now, right? Electrons crossing these copper and fiber wires were different. And having it near, that the title of the patent is, you know, located near a wireline node, and it says that over and over again, and the judge adopted that rather than any coupling anywhere in the network. And as to the wireline node itself... I guess I'm confused. What is it that you think it means to be coupled to, if that is satisfied by near, or are you and I coupled to each other? Your Honor, connected in or near was the construction that we were defending in the context of the speech recognition system and the wireline node, right?  and that that connection has a proximity component. It can either be located within the node, as disclosed in Figure 3, for example, or it can be near the node. But it can't be anywhere in the network. It has a connection requirement, coupling, and a proximity requirement as disclosed. And what is the language... I mean, that's certainly not the definition of coupled that has appeared in any of our cases, many, many, many of which I've written, some of whom have defined were coupled. What in this patent tells you that coupling requires nearness? So, two things. One is, every time that this particular coupling... Show me in the patent. Show me the specification. Show me in the patent language that should cause me to conclude that the word coupled to deviates from the ordinary meaning that I would give it, which does not include the word near, and no expert would ever say it includes the word near. So, show me where this patent says it has to be near. The word coupled should deviate from its plain ordinary meaning, which has been articulated in many court decisions in this court. Right, Your Honor. So, we'll start with the first sentence of the patent, which is in column one, line 26. This invention relates to speech recognition performed near a wireline node of a network supporting cable television and or video delivery. And that statement or similar ones appear five or six times in the specification. Okay, that's in the background of the invention under the definition of technical field. That certainly doesn't import a limitation into the claim that otherwise changes the plain meaning of the claim term. So, what else? I completely agree, Your Honor. We can go to summary of the invention, column five, line 15. And these are all going to be in the specification, to be clear. I'm pointing to the inventor's disclosure. The invention comprises a multi-user control system for audio-visual devices that incorporates a speech recognition system that is centrally located in or near a wireline node. And it goes on, but that's the proximity point. Am I remembering right? There's something in the spec that talks about near a head end, near a server farm. There's a list of four different things in the network. Yes. And are you arguing that being near any of them would be enough? No, he's not arguing that. No, I'm arguing the wireline node point because that's the claim. The problem you have is, what about the very next sentence? Because the next sentence is where Judge Tarasso is getting his idea from. Speech recognition system may also be centrally located in or near a server farm, a website hosting facility, or a network gateway. That's not the node. No, Your Honor. But that's not what's claimed. The claims we're discussing here are the ones that have coupled to the wireline node, right? Which is... Yes, but this invention language that you're pointing to explains that a speech recognition system can be located near any of these things. Not necessarily has to be near the wireline node. Right, but if the claims... I'm not sure I'm disagreeing with you. You would be much better off if these two separate sentences used the term coupled rather than located. But when we have a claim term that says coupled to a wireline node, that would, in the ordinary, just mean that it doesn't even have to be located. I agree in general, Judge Tarasso, and the second half of my answer to Judge Moore would be, Chief Judge Moore would be, this patent uses the term coupled many, many times. I think 59 or 60. Almost always with a modifier. Tightly coupled, communicatively coupled, and so forth. When it uses it only to refer to coupled without a modifier, it refers to the speech processor in the wireline node in this in or near configuration. So it's an odd way. Again, this patent is oddly drafted, but it's sort of a negative construction from the way the patent uses it that the coupling here is one of proximity. And again, Mr. Schmandt explained in his declaration that that is due to latency considerations in the network. Why would a wireline node be anything other than just a hardwired node? Your Honor, here is, in the patent, one of the very few terms that the patentee defined was centralized wireline node. But the word centralized isn't in this claim. The word centralized wireline node... And you know what, Mr. Perry, you were very happy to go along with all of my arguments or discussions in the earlier cases about how this claim was written so broadly it's not even limited to video or audio transmission. But these kinds of claims... The 326 claims are written very, very broadly. These claims are more detailed, Your Honor. But we do have a disconnect between the specification and the claims. I mentioned that earlier. So the specification defined a term that then is not used anywhere else in the patent. Whether that happened over time, we don't know. The question is, did they mean the same thing as the district court found they did? In other words, it defines centralized wireline node in a very specific way, and then it talks over and over again about wireline nodes. Is that a different thing than a centralized wireline node? We don't think so. Because if you read the patent... When a patent uses two different terms, they're presumed to be different things. Well, but it only uses and defines centralized wireline node once, right at the beginning. As used herein, this term means this. And then it never uses it again. How many patents spin off of a single specification? How about just in this particular case? I completely agree with you, Your Honor. There's lots of times the specification has embodiments or discussions or definitions that aren't part of what end up in this set of claims, but maybe end up in lots of others, right? There's tons of continuations. I mean, look at how many spin-offs we got here. I agree with you. I'm not sure centralized wireline node appears in any of them. I could be wrong. I haven't read all of them. But we've been looking at this a long time. This appears to be where it is. I mean, that's where the judge got the definition, is from the patent specification, the definition in the patent. Okay. Can you move briefly to the centralized processing station? Certainly, Your Honor. So the locational component as to the head end, again, comes back to the disclosures and the specification as well as the purpose of the invention of how these networks worked at the time. In other words, how a person of skill would have understood the cable or video delivery network to work. And the description, as noted earlier, points to the head end as the location for the processing. Yeah, but, okay, the claim itself doesn't limit the central processing unit, at least not in this claim, to be located in the head end. Well, this claim does limit it to being centralized. And we know from the discussion of these networks what the centrality, the central point of these networks is, is the network head end. So there is claim language here pointing centralized must mean something. And the head end is the only, I think, logical place, at least certainly supported by the disclosure, to locate that centralized station. Because anything else would not be centralized. I thought that even this, having determined that the definition at the bottom of Column 1, that sentence says, for purposes of discussion herein, a centralized wireline node refers to a network node providing video or cable television delivery to multiple users using a wireline physical transport between those users at the node. What do you think that does by way of restricting it? Do you think that limits it to the head end as opposed to, there's this cable network that has user endpoints and then everything north of that is part of the network and all of it is involved in providing video or cable television delivery to more than one user. Isn't everything up there centralized? Wireline node? I don't believe so, Your Honor. I think centralized has, there's two ways to look at it. I think if I understood the question correctly, it would be, is anything upstream of the set-top box centralized? Well, as long as it serves at least two set-top boxes. And I believe that's Promptu's position boiled down to its essence. Our point is upstream of the set-top boxes you have a network and within that network there are many things, amplifiers, repeaters, and so forth, but at the center of the network is the head end as disclosed in the patent and therefore when it says centralized it doesn't mean just upstream because the patent actually uses the word upstream a number of times. It must mean centralized so that within the network it can't be anywhere in the network. It has to be in a central location in the network and the head end is the only... Is it your view that the central processing station and that, is it called head end unit? I think head end unit is the... Head end or head end unit, yes, Your Honor. Yeah, is it your view that those are one and the same? That there is a complete one-to-one overlap in all of their functionalities, performance, whatever? No, Your Honor. The head end is well-known in the prior art. It's basically the mothership of the cable system, if you will, where the video is... the programming is aggregated whether it's from satellite or other cables or broadcast and then it's sent out to subscribers. So the head end is a thing, in other words, known to the art and that's described in the specification in the Mr. Schman's declarations. I realize this... I guess this is... We've separate issues about the 538, which is very thin and has... is one thing. Am I remembering right? In the 196, one of... one or more of the figures shows grandmothership, like metropolitan head end, multiple head ends in communities. There can be multiple head ends, Your Honor, depending on the size of the network for distribution reasons, yes. Okay. And does that... does the fact that there's a multiplicity of those tell you anything about what centralized must mean? Well... If there's not one unique thing, it's a little hard to say it must be that because there can be a lot of that. Well, from the head end, whether it's an intermediate head end or a full head end is where the downstream distributions are originating to come back to the set-top boxes, right? So there's a logical, you know, a network architecture reason to locate the speech processing engine or the central processing station at the head end because once the speech is processed... So, I mean, if you have one of these systems that is in one of the figures, at least, with a metropolitan head end and then a multiplicity of head ends, in your view, where... which one are we talking about? So the construction says at the head end.  was litigated below, Your Honor. So that presupposes a single head end. No. It seems wrong under the patent, doesn't it? No, Your Honor. I think the construction works at either a metropolitan head end or a master head end. I just haven't thought it through and I don't think the... I don't think Mr. Schmantt testified to it. All right. Figures 21 and 22 show these. But the logic of locating at the head end would equally apply to the metropolitan head end, I think. Okay. Thank you, Mr. Perry. Thank you, Your Honor. Mr. Tate. You're running out of time. You've got six minutes of rebuttal time. One point I'd like to start with is the DOCSIS system that's disclosed. That's a system for connecting a cable box to the Internet. And the Schmantt declaration, he says, when you're transmitting speech packets, they may or may not go over a fixed frequency band. And then the argument is, well, then that embodiment is not excluded. It's a little circular because it's not excluded if the speech packets go over a fixed frequency band. It imports that. So an Internet connection, it does not necessarily go over fixed frequency bands. And that's the point we were making, that this embodiment wouldn't be excluded. And the Schmantt declaration supports that. It's saying it may or may not. Did DOCSIS use the coax coming into that? Yes. So not a separate physical wire? No. It's a protocol for over cable. But at some point, that goes into a gateway. That's right. And at that point, it may or may not be. It could take a different path. On the speech channels and the word single, I think Council said that meant that there was an identified user. There are other ways to identify users. There aren't one-to-one identified paths. So even though there are specific users, saying the only way to identify them is by a specific channel is not required. On the question of the speech recognition system, we were looking at column five under the summary of the invention where it says there are locations for that. I just think the point there is that the speech recognition could be at those other locations that are described and still be coupled to. It doesn't have to necessarily reside at that point. The last thing, we have asked this court to at least review the district court's claim construction and vacate it if the court thinks it's wrong. We obviously don't have a full record about what the products are. Claim construction, as we know, is supposed to be done regardless of the products. We think the court can do it. But if you're unable to, then I think the appropriate remedy is to vacate the claim construction, vacate the stipulation of non-infringement, and send it back. Okay. I thank both judges for the argument. And Mr. Hicks, the court appreciates that as much as we enjoy hearing from you, we hear from you four times. I applaud the spreading out of the argument among your more junior folks.